CHURCH OF SCIENTOLOGY
INTERNATIONAL, Plaintiff,
Appellant,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, Defendant, Appellee.

No. 94–1112.

United States Court of Appeals,
First Circuit.

Heard May 4, 1994.

Decided July 26, 1994.

Kendrick L. Moxon, Los Angeles, CA, for appellant.

George B. Henderson, II, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., Boston, MA, was on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

The plaintiff Church of Scientology International brought this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel disclosure of documents held by the Department of Justice pertaining to the Church and related entities. The Department released about 1,000 pages in full or in part, but withheld more than 700 additional pages based on various FOIA exemptions. The Church objected to both the breadth of the Department's internal search for documents and the number of exemptions asserted. The district court granted summary judgment for the government. On appeal, the Church argues that the government has not satisfied its burden of showing that no further documents are subject to release, and that the court consequently erred in granting judgment as a matter of law. We affirm part of the court's decision, but vacate the remainder and remand for further proceedings.

## I. *Background*

In September 1988, the Department's Executive Office for United States Attorneys (EOUSA) received a FOIA request from the Church seeking all records located in the U.S. Attorney's office in Boston that con-

cerned the Church, two related Church entities, or Scientology in general. The Church particularly was interested in documents about a check fraud scheme involving the Church as a victim, and a later extortion plot against the Church arising from the fraud.[1] In April 1990, the EOUSA released 542 pages in full or in part, and informed the Church that additional responsive material had been withheld pursuant to specified FOIA exemptions. The government also reported that other documents had been referred to the agencies from which they had originated for consideration of release.

The Church administratively appealed, challenging the adequacy of the search and the validity of the exemptions. In September 1992, having received no response, the Church filed this action. The records concerning the Church's request were then reviewed by a special assistant U.S. attorney, Charlene Stawicki, who concluded that the lapse of time since the original search made it difficult to ascertain how it was performed. She therefore arranged a new search, the nature of which is detailed fully in the district court's opinion. It suffices to say here that the search involved the use of a comprehensive computerized record-tracking system.

The new search led to the release of an additional 459 pages in full and 14 pages in part. Two further reviews of the documents, one following the Supreme Court's clarification of FOIA law in *United States Dep't of Justice v. Landano*, —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), and another based on a new policy statement from Presi-

dent Clinton and Attorney General Reno,[2] resulted in the release of approximately 75 more pages in full and 15 in part.

This succession of disclosures left about 744 pages withheld in full and approximately two dozen withheld in part. The bases for these withholdings were set forth in declarations by two Department attorneys,[3] and in a *Vaughn* index.[4] The index, a now standard tool conceived by the District of Columbia circuit to facilitate resolution of FOIA disputes, provides a brief description of each of the 191 withheld documents and identifies the exemptions assertedly permitting their nondisclosure.

In ruling on the government's motion for summary judgment, the district court found that these materials adequately justified both the scope of the search and the withholdings. Its decision can be broken down into four separate conclusions: (1) the search itself was done reasonably, and the documents produced fulfilled the government's obligation under FOIA; (2) the *Vaughn* index generally was sufficiently detailed to permit the court to review the Department's claims of exemption; (3) the index and supporting affidavits specifically supported the exemptions claimed by the Department to justify withholding documents; and (4) discovery was unwarranted because the government's showing was adequate, and discovery would be unlikely to result in a different outcome while placing a substantial burden on the Department and the court.

The Church now claims that the district court abused its discretion in refusing discovery and awarding summary judgment based

---

**1.** The Church asserts two primary purposes for its document request. First, it believes that false reports about the Church have precipitated FBI harassment of Church members and investigators, and Church officials therefore want to acquire any such reports so that the information may be corrected. Second, the Church wants to learn why the government did not prosecute more than one individual in the check fraud scheme.

**2.** The new policy emphasized a commitment to openness, and urged agencies to withhold documents that technically might fall within an exemption only when "the agency reasonably foresees that disclosure would be harmful to an interest protected by that exemption."

**3.** A 12–page declaration was submitted by John F. Boseker (the "Boseker Declaration"), an attorney advisor with the EOUSA, whose responsibilities include the review of requests made under FOIA and the Privacy Act, 5 U.S.C. § 552a. Bonnie L. Gay, attorney in charge of the Executive Office's FOIA/Privacy Act Unit, provided supplemental information in a six-page declaration.

**4.** The name of the index is derived from the seminal case, *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973).

on the submitted declarations and *Vaughn* index, asserting that these items were too vague and conclusory to support the exemption claims. The Church also challenges the reasonableness of the search conducted by the Department, claiming that the search was too narrowly circumscribed.

Our review of the district court's determination that the government was entitled to summary judgment based on its index and affidavits is *de novo. See Licari v. Ferruzzi,* 22 F.3d 344, 346–47 (1st Cir.1994) (summary judgment standard); *Wiener v. FBI,* 943 F.2d 972, 978 (9th Cir.1991) (FOIA standard). Our discussion begins with a review of general FOIA standards and principles.

## II. *The Freedom of Information Act*

The FOIA requires government agencies to "make ... promptly available" to any person, upon request, whatever "records" the agency possesses unless those "records" fall within any of nine listed exemptions. 5 U.S.C. § 552(a)(3), (b).[5] The statute's basic purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society," *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978), or, stated more specifically, " 'to open agency action to the light of public scrutiny,' " *Department of Justice v. Reporters Committee,* 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (citation omitted). The policy underlying FOIA is thus one of broad disclosure, and the government must supply any information requested by any individual unless it determines that a specific exemption, narrowly construed, applies. *Aronson v. IRS,* 973 F.2d 962, 966 (1st Cir.1992). The government bears the burden of demonstrating the applicability of a claimed exemption, *Maynard v. CIA,* 986 F.2d 547, 557–58 (1st Cir.1993); *In Re Department of Justice,* 999 F.2d 1302, 1305 (8th Cir.1993) (en banc), and the district court must determine *de novo* whether the queried agency has met this burden, *Aronson,* 973 F.2d at 966.

FOIA also provides for partial disclosure of documents that contain some ex-empted information, mandating that "all reasonably segregable, non-exempt portions of any agency records must, after deletion of the exempt material, be disclosed to a requester, 5 U.S.C. § 552(b)," *Wightman v. Bureau of Alcohol, Tobacco & Firearms,* 755 F.2d 979, 983 (1st Cir.1985). In determining segregability, "courts must construe the exemptions narrowly with the emphasis on disclosure," *id..* An agency may withhold non-exempt information only if it " 'is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden,' " *Id.* (quoting *Lead Industries Ass'n v. Occupational Safety and Health Admin.,* 610 F.2d 70, 86 (2d Cir.1979)). *See also Krikorian v. Department of State,* 984 F.2d 461, 466 (D.C.Cir.1993) (" 'non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions' " (citation omitted)).

To assure the broadest possible disclosure, courts often direct a government agency seeking to withhold documents to supply the opposing party and the court with a *Vaughn* index, which includes a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document. *Maynard,* 986 F.2d at 556–57; *Vaughn,* 484 F.2d at 823–28. Such an index is viewed as necessary to protect the adversary process in a FOIA case, in which only the party opposing disclosure will have access to all the facts. *Wiener,* 943 F.2d at 977; *Vaughn,* 484 F.2d at 823–28. We previously have identified a trio of functions served by the index:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Maynard,* 986 F.2d at 557 (quoting *Keys v. United States Dept. of Justice,* 830 F.2d 337,

---

**5.** The exemptions protect, *inter alia,* privacy and confidentiality interests, the secrecy of grand jury proceedings, and matters covered by the attorney-client privilege.

349 (D.C.Cir.1987) (quoting *Lykins v. United States Dept. of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984))). *See also In Re Department of Justice,* 999 F.2d at 1305.

▪ Although FOIA's primary thrust is to promote openness, the Supreme Court also has recognized a Congressional intent "to provide 'workable rules' of FOIA disclosure," *Landano,* —— U.S. at ——, 113 S.Ct. at 2023 (citing cases). To that end, the Court has interpreted the statute as permitting agencies to exempt certain records on a categorical basis, rather than requiring a document-by-document consideration. In *Reporters Committee,* for example, the Court concluded that criminal "rap sheet" information is categorically exempt from disclosure because the release of such information invariably constitutes an unwarranted invasion of privacy.[6] 489 U.S. at 780, 109 S.Ct. at 1485. The Court has reached a similar conclusion with respect to the exemption of material furnished by sources, *see Landano,* —— U.S. at ——, 113 S.Ct. at 2022, holding that "when certain circumstances characteristically support an inference of confidentiality," the Government may justify nondisclosure without detailing the circumstances surrounding a particular interview.[7]

FOIA's general philosophy remains, however, one of " 'full agency disclosure,' " *Aronson,* 973 F.2d at 966 (quoting *Department of Air Force v. Rose,* 425 U.S. 352, 360, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965))), and courts have the obligation to interpret its reach "generously, in order to achieve the FOIA's basic aim: sunlight," *id..* *See also Landano,* —— U.S. at ——, 113 S.Ct. at 2024.

▪ What usually remains unspoken, but is a reality often affecting attitudes and con-

duct implementing FOIA, is the very considerable burden laid on both the government and the trial court in searching files for multitudinous documents, analyzing them, and justifying not only any exclusion relied upon but any refusal to redact and segregate the disclosable from the residually privileged. This burden often is exacerbated by the apparent lack of any perceptible public purpose on the part of the requester. In such a case, already burdened courts and agencies may deem FOIA's dedication to the importance of "sunlight" as unrealistic. We thoroughly appreciate this kind of tension. We are dealing with a law that complicates the task of governing. Yet, its goals are worthy, and we are bound to honor both its letter and its spirit. Moreover, as in any "hard case," we must constantly remind ourselves that our decision establishes principles that must be generally applicable—both to requests that seem merely annoying and to those that may reflect the most vital concerns of citizens. *Cf. Senate of Puerto Rico v. Department of Justice,* 823 F.2d 574, 587 (D.C.Cir.1987) ("The costs must be borne . . . if the congressional policy embodied in FOIA is to be well served.")

### III. *Did the Government Meet Its Burden?*

#### A. *Adequacy of the Search*

When the Church submitted its request for documents in September 1988, it triggered a responsibility on the part of the Department of Justice to do a reasonably thorough search of its records and to turn over all responsive materials except those for which it could prove an exemption from disclosure. *Maynard,* 986 F.2d at 559. The Church has two primary complaints about what transpired. First, it claims that the search was too narrow, and, consequently, that more responsive

---

**6.** The Court in *Reporters Committee* was construing FOIA Exemption 7(C), which allows the Government to withhold law enforcement records or information whose production "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).

**7.** *Landano* concerned Exemption 7(D), which permits the Government to withhold

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, . . ., and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.
§ 552(b)(7)(D).

documents should have been found. Second, it claims that the Department has failed to meet its burden of proving that all of the withheld materials are exempt from disclosure. Like the district court, the parties break this issue into three components: (1) is the index generally too vague? (2) are the specific claims of exemption supportable? (3) did the court abuse its discretion in denying discovery?

■ We readily can dispose of the first issue. As we have noted, the adequacy of an agency's search for documents under FOIA is judged by a standard of reasonableness. *Maynard,* 986 F.2d at 559. "The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.' " *Id.* (citation omitted). The district court properly identified and applied this standard here, finding that the search was adequate based on the details provided in the Stawicki affidavit.

Ms. Stawicki stated that she directed the second search for documents conducted after the Church filed suit, that the search was conducted through a computerized record system whose capabilities she described, that a manual search would be impossible, and that she personally searched the computer files for specific documents responsive to the Church's request. The court found that this information, in the absence of any evidence of bad faith, was sufficient. We agree, and thus affirm its conclusion.[8]

The Church's second complaint is more compelling. Although implicitly contending that the government has withheld an excessive number of documents, the Church at this juncture really is making a more limited argument. It maintains that the affidavits and *Vaughn* index were too vague and conclusory to permit it or the district court meaningfully to evaluate the Department's exemption claims, and the Church therefore asserts that it was entitled to more information, either through discovery or a revised index, before the summary judgment motion properly could be decided.

## B. *General Inadequacies of the Index and Affidavits*

We have studied carefully the affidavits and index, considering separately each of the 191 entries, and are persuaded that, with respect to many documents, the government has failed to support adequately its claim of exemption.[9] Each entry contains four types of information: (1) the number of pages in the document; (2) a brief description of the nature of the document; (3) the content of the withheld portions; and (4) the statutory exemption numbers claimed to support non-disclosure. Document No. 4, for example, is entered in the index as follows:

| [Pages] | [Description] | [Content/withheld portions] | [Exemptions] |
|---|---|---|---|
| 21 | Typed AUSA notes (undated) | Attorney work product document marshalling facts and sources of information created in contemplation of litigation. Confidentiality referenced throughout document. References Third Party Individuals throughout. (WIF [withheld in full] ) | b(5) b(7)(D) b(7)(C) |

■ In our view, the descriptions for many of the documents are too cursory to permit debate, or an informed judgment, about whether they properly may be withheld. As with Document No. 4, multiple exemption numbers are noted beside many entries, without any correlation between a particular exemption and the sections of the

---

**8.** The Church made two specific arguments regarding the inadequacy of the Department's search, neither of which were raised before the district court. We therefore need not, and do not, address them here. *See Watkins v. Ponte,* 987 F.2d 27, 29 (1st Cir.1993).

**9.** Some of these documents have been released in whole or in part as a result of the administration's openness policy. *See supra* note 2. The government identifies these documents as Nos. 58, 63–66, 69, 71–73, 77–81, 84–86 and 88–90.

document to which it relates. Most documents, including lengthy ones like No. 4, are withheld in their entirety, without any reference to segregability.

The declarations submitted with the index contain only general and conclusory assertions concerning the documents. For example, with respect to documents claimed to be exempt under the privacy provision, Exemption 7(C), *see supra* note 6, the Boseker declaration first describes the types of information to which the exemption applies,[10] and then states categorically that "there was no public interest in the release of this information nor any interest which would counterbalance the individual's privacy in the information withheld under this exemption." The declaration states that each document was evaluated for segregability, and that, where a document was withheld in its entirety, "EOUSA determined that no meaningful portions could reasonably be released without destroying the integrity of such document as a whole."

The Gay declaration supports the privacy withholdings by emphasizing that the Church's reported policy of retribution against its perceived enemies provided the basis for the Department's substantial concern about protecting the personal privacy of government employees and third party contacts. Gay repeats essentially the same general conclusion about segregability offered by Boseker: "There are no segregable portions which have not been released which could be released without creating a substantial risk of disclosing information protected from disclosure."

These declarations are written too generally to supplement the index in any meaningful way. They treat the documents within various exemption categories as a group, without referring to specific documents, and make broad statements essentially explaining that the documents were withheld because they contain the type of information generally protected by that particular exemption. The statements regarding segregability are wholly conclusory, providing no information that would enable a requester to evaluate the agency's decisions. Thus, none of the functions of the index identified in *Maynard* are served: the declarations do not demonstrate careful analysis of each document by the government; the court has not been assisted in its duty of ruling on the applicability of an exemption; and the adversary system has not been visibly strengthened. *See supra* p. 228.

Although "[t]here is no set formula for a *Vaughn* index," *Hinton v. Department of Justice,* 844 F.2d 126, 129 (3d Cir.1988), to serve its purpose the listing " 'must supply "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply,*" ' " *Krikorian,* 984 F.2d at 467 (citations omitted) (emphasis in original). It is "the function, not the form, which is important," *Hinton,* 844 F.2d at 129, and the question is whether the particular taxonomy employed "afford[s] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding," *Wiener,* 943 F.2d at 977–78.

 The lack of justification for withholding lengthy documents in their entirety is the most pervasive problem with the index. Upon encountering similarly imprecise indices, the District of Columbia Circuit recently

---

10. Paragraph 15 of the declaration states:
 This exemption applies to withhold identities of and personal information about third party individuals, release of which could subject such persons to unwanted and even unlawful efforts to gain further access to them or personal information, harassment or harm, exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case, all to their detriment.
 This exemption also applies to withhold identities of individuals such as special agents, government employees, and local law enforcement personnel who participated in the investigation and prosecution of the referenced cases. Individual duties and assignments are not public and such publicity as would likely arise from disclosure would seriously impede, if not totally jeopardize law enforcement effectiveness in subsequent cases, even subjecting such individuals to harassment or harm. These persons have protected privacy interests in the conduct of law enforcement investigations.

noted, in words equally apt here, that the materials submitted

> "[we]re written in terms of documents, not information, but '[t]he focus in the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.'"

*Krikorian,* 984 F.2d at 467 (citation omitted). We think it fruitful to examine closely several entries as a way of demonstrating the index's deficiencies:

*Document No. 5 is a 32–page declaration, with four pages of supporting exhibits. The contents column contains the following information:

> Individual third party declaration of and concerning relationship with Church. Not evidenced as admitted into court or on public record, so deemed confidential statement. (WIF)

The entire document is withheld pursuant to Exemption 7(C), the personal privacy exemption. The entry fails, however, to indicate why privacy concerns could not be met simply by deleting identifying information. Without some further elaboration of the document's contents, the Church is unable to dispute the claim that no portion of the 36 pages is segregable.[11]

*Document No. 6 is an 11–page affidavit from a third party containing the following information:

> Individual third party affidavit concerning Church and other matters. Not evidenced as admitted into court or on public record, so deemed confidential. (WIF)

11. The government states in its brief with respect to this document that "the EOUSA could properly determine that even partial disclosure might well allow plaintiffs to identify the declarant through the nature of the information disclosed." The government unquestionably could make such a determination, but it needs to provide more than this unsupported conclusion to justify withholding the whole document. Is the document full of personal anecdotes, whose perspective would tend to reveal the declarant, thus supporting this conclusion? Or does the document simply give one individual's description of the way the Church generally treats members, and thus arguably include material that could be segregated from the identifying information?

The entire document is withheld pursuant to Exemption 7(C), as well as under the Privacy Act, 5 U.S.C. § 552a(j)(2).[12] Again, no attention is given to segregability. What were the "other matters" described? This entry unquestionably fails to supply the Church with enough information " 'to permit [it] to present its case effectively,' " *Orion Research Inc. v. EPA,* 615 F.2d 551, 553 (1st Cir.1980) (citation omitted), the function the index was conceived to perform.

*Document No. 20 is a 49–page deposition transcript described as follows:

> Transcript of deposition of third party individual taken by private reporting service in Commonwealth of Mass. (WIF)

The entire document is withheld pursuant to Exemption 7(C), yet nothing in the entry indicates why the privacy interest at stake could not be protected simply by redacting identifying information.

*Document No. 96 is a six-page deposition summary, withheld pursuant to Exemption 7(C), and described only as a "[s]ummary of deposition of third party individual." Segregability once again is not addressed. The entry for Document No. 104, also a six-page deposition summary, is similarly deficient.

*Document No. 141 is a 29–page declaration withheld pursuant to 7(C), described as follows:

> Third party individual/source declaration. Not public record or waiver of confidentiality. (WIF)

As with other entries, there is no explanation about why the deletion of identifying information would not suffice to meet privacy concerns.

12. Section (j)(2) exempts from mandatory disclosure records maintained by an agency that performs as its principal function any activity pertaining to the enforcement of criminal laws. Section (k)(2) of the Act similarly exempts certain investigatory materials compiled for law enforcement purposes in other than criminal matters. Although the Boseker Declaration states that all of the relevant records in this case were exempt under one or the other of the Privacy Act provisions, only certain of the entries include (j)(2) as a justification for nondisclosure. *See, e.g.,* Document Nos. 6, 11, 13, 15–19, 43, 46, 53, 55, 56, 58, 60–62, 75, 76, 95, 109, 111, 115–121, 123, 125, 127, 146, 185, 187, 190, 191.

The district court concluded that the index, as supplemented by the Boseker and Gay declarations, fulfilled the government's obligation to supply "reasoned justification" for its withholdings, and it noted that the Church had presented no evidence suggesting bad faith in the government's response. The court observed that the government had supported the individual withholdings with greater specificity than this court had ratified in *Maynard*.

In our view, however, the government's showing fell short of providing the Church with a " 'meaningful opportunity,' " *see Wiener*, 943 F.2d at 977, to challenge a substantial number of its unilateral decisions to withhold documents, thus depriving the district court of "the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination," *Vaughn*, 484 F.2d at 825. We disagree with the district court that the showing exceeded that affirmed in *Maynard*. In that case, *see* 986 F.2d at 557–59, the FBI produced the withheld documents in redacted form, withholding only those portions that it claimed were exempt. Next to each portion withheld, the FBI provided a coded reference to exemption claims specifically identified in a separately filed declaration. The government also provided copies of the unredacted documents for the court's *in camera* review. Unlike this case, therefore, the court in *Maynard* was able to perform a close review of individual documents.

■■■ The government suggests that, in the absence of any legitimate question of good faith, its repeated review of the documents, each time leading to a conclusion that no significant non-exempt segments could be released, is sufficient to justify its withholding decisions and failure to segregate. It claims that the only meaningful way to test the Department's determinations would have been through *in camera* review, which the Church did not request.

A lack of bad faith on the part of the government, however, does not relieve it of its obligation in the first instance to provide enough information to enable the adversary process to operate in FOIA cases. The presumption of good faith accorded to agency affidavits, *see Carney v. Department of Justice*, 19 F.3d 807, 812 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, —— L.Ed.2d —— (1994); *Maynard*, 986 F.2d at 560, can only be applicable when the agency has provided a reasonably detailed explanation for its withholdings, *see Maynard*, 986 F.2d at 560. A court may not without good reason second-guess an agency's explanation, but it also cannot discharge its *de novo* review obligation unless that explanation is sufficiently specific.

■■■ Additionally, the fact that the Church did not request *in camera* review in no way lessens the government's burden to make an adequate showing. FOIA provides for *in camera* review, at the district court's discretion, if the court finds the agency's materials in support of exemption to be too generalized. *See id.* at 557. In other words, *in camera* review is a tool available to a court when the government's showing otherwise is inadequate to satisfy the burden of proving the exempt status of withheld documents. *Id.* at 557–58. The Church had no obligation to request such a review.

We emphasize that the index examples described above are merely illustrative, and that numerous other entries suffer from similar imprecision. We by no means suggest, however, that every entry is vulnerable. The index is notably inadequate with respect to lengthier documents, where the lack of correlation between the exemptions claimed and specific portions of the document, and the failure to address segregability, combine to make the government's showing particularly vague. In contrast, a number of documents consist of a single page. It is fairly inferable from the entries for many of these that there is no meaningful segregable non-exempt content, and we see nothing to be gained from requiring more detail. *See, e.g.,* Document Nos. 8, 9, 48, 56, 59, 127. Similarly, where multiple exemptions are claimed for these short documents, the lack of correlation typically is not a problem.

■■■ The government makes two points regarding the adequacy of its declarations and *Vaughn* index that warrant response. First, it asserts that the degree of

detail required in an index depends upon the nature of the documents at issue and the particular exemption asserted. We agree that different approaches apply to the various statutory exemptions, and we will discuss the specific exemptions claimed by the government in the next section. At this juncture, we note simply that a categorical approach to nondisclosure is permissible only when the government can establish that, in every case, a particular type of information may be withheld regardless of the specific surrounding circumstances. *See supra* p. 229.

■■ The government also observes that courts have approved indices with less detail where the records at issue are voluminous, citing *Meeropol v. Meese*, 790 F.2d 942, 956–57 (D.C.Cir.1986). In *Meeropol*, government agencies retrieved approximately 500,000 pages of records and released approximately 200,000 as a result of what the court described as perhaps "the most demanding FOIA request ever filed," *id.* at 951. Both the search and the methods used to evaluate the search in that case were extraordinary, and, in our view, do not support the sufficiency of a sketchy index in this case.[13] Giving full weight to the concern that the government should not be subjected to unrealistically exhaustive labors, we nevertheless are convinced that the task of reconsidering the 191 documents, adding meaningful detail or explanation where necessary, would not pose an unreasonable burden on the government. Indeed, including this information at the outset would have required negligible incremental effort.

Moreover, even when generic exemptions are appropriate, the Supreme Court contemplates that the government provide meaningful detail in support of its withholdings. In *Landano*, the Court rejected the government's argument that a source should be presumed confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation. It held, however, that the inference could be supported by reference to more narrowly defined generic circumstances. For example, it would be reasonable to infer that paid informants normally expect their cooperation with the FBI to be kept confidential. Similarly, the character of the crime at issue or the source's relation to the crime could support such an inference.

It is not enough, however, for the government simply to state blandly that the source's relationship to the crime permits an inference of confidentiality. Rather, the government has an obligation to spell out that relationship:

> [W]hen a document containing confidential source information is requested, it generally will be possible to establish factors such as the nature of the crime that was investigated and the source's relation to it. Armed with this information, the requester will have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality.

*Landano,* —— U.S. at ——, 113 S.Ct. at 2024.

■■ Of course, as the Court acknowledged in the next sentence of this passage from *Landano*, the government is not expected to provide so much detail in its supporting materials that it risks compromising the very interests it is seeking to protect. The agency may request *in camera* review as a way of demonstrating that no further specificity should be required, and reviewing courts should consider carefully whether such a step is feasible and appropriate. As much as possible should be done openly, however, keeping in mind the goal of advancing adversarial testing of agency decisions. *See Wiener*, 943 F.2d at 979 ("Unless the agency discloses 'as much information as possible without thwarting the [claimed] exemp-

---

13. The government's other citation for this point, *Weisberg v. Department of Justice*, 745 F.2d 1476, 1483 (D.C.Cir.1984), also involved a tremendous search, resulting in disclosure of approximately 60,000 pages of documents. The district court in that case ordered preparation of a *Vaughn* index of every two hundredth page of responsive material, a supplement to that index, and *in camera* submission of a number of documents withheld in their entirety. *Id.* at 1489–90. The circuit approved the sampling procedure because the number of documents was so great and "it would not realistically be possible to review each and every one." *Id.* at 1490.

tion's purpose . . ., the adversarial process is unnecessarily compromised." (citation omitted)).

We strongly believe that there are meaningful additions that could be made to the *Vaughn* index in this case without jeopardizing the interests at stake. In the next section, which discusses the specific exemptions invoked by the Department, we note some particular suggestions for improvement.

### C. *Specific Exemptions*

The Department invoked six different FOIA exemptions, alone or in combination, in support of its withholdings. On appeal, the Church does not challenge the government's use of either Exemption 2, which protects from disclosure information related solely to the internal personnel rules and practices of an agency, *see* 5 U.S.C. § 552(b)(2), or Exemption 7(F), which provides for withholding of law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F).

■■■ (1) *Exemption (b)(3) and Fed. R.Crim.P. 6(e).* FOIA Exemption 3, 5 U.S.C. § 552(b)(3), allows the withholding of materials that are "specifically exempted from disclosure by statute . . . ." The parties agree that the Department properly invoked this provision to withhold grand jury materials made exempt from disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure. *See Fund for Constitutional Gov't v. National Archives and Records Serv.,* 656 F.2d 856, 867 (D.C.Cir.1981). The Church complains, however, that it is impossible to determine from the *Vaughn* index and affidavits whether all of the documents for which the Department asserted this privilege genuinely constitute "grand jury" material.

As the district court recognized, the scope of secrecy afforded grand jury materials is "necessarily broad." *Id.* at 869.

It encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like."

*Id.* (quoting *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.1980)). In addition, unlike actions under other FOIA exemptions, agency decisions to withhold materials under Exemption 3 are entitled to some deference. We have observed that "once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA *de novo* review normally ends," *Maynard,* 986 F.2d at 554 (quoting *Aronson,* 973 F.2d at 965, 967).

We are satisfied that, under this standard, documents identified as grand jury exhibits, and whose contents are testimonial in nature or otherwise directly associated with the grand jury process, such as affidavits and deposition transcripts, ordinarily may be withheld simply on the basis of their status as exhibits.[14] We distinguish such materials from business records or similar documents "created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings," *United States v. Dynavac, Inc.,* 6 F.3d 1407, 1412 (9th Cir.1993). Although these documents, too, may be subject to nondisclosure under Exemption 3 if they are grand jury exhibits, the government needs to provide some basis for a claim that releasing them will implicate the secrecy concerns protected by Rule 6(e).[15]

14. This would include, *inter alia,* document Nos. 2 (grand jury list of documents), 3 (exhibits list), 130–33, 142, 148, 153, 163, 172, 173, 181, 182, 184, 187, 188–90.

15. We think it reasonable for an agency to withhold any document containing a grand jury exhibit sticker or that is otherwise explicitly identified on its face as a grand jury exhibit, as release of such documents reasonably could be viewed as revealing the focus of the grand jury investiga-

tion. *See Fund for Constitutional Gov't v. National Archives and Records Serv.,* 656 F.2d 856, 869 (D.C.Cir.1981) (information "identifying documents considered by the grand jury . . . falls within the broad reach of grand jury secrecy. . . ."). *See, e.g.,* Document Nos. 35, 52. Whether some portion of the document is segregable, however, also needs to be considered and addressed.

The requirement that the government explain the basis for its conclusion that Rule 6(e), and thus Exemption 3, at least arguably permits withholding of certain documents applies *a fortiori* to materials not specifically identified as grand jury exhibits, but which simply were located in grand jury files. In this case, for example, Document Nos. 164, 166–170, 174–180 and 183 are labelled as "Grand Jury Materials," and most were found in a file marked "Grand Jury." [16] There is no indication, however, whether the materials impermissibly would reveal the inner workings of the grand jury. It cannot be that exposure to the grand jury immunizes information from future disclosure, regardless of its impact on the interest underlying Rule 6(e). *See Senate of Puerto Rico*, 823 F.2d at 582 ("There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers . . . .").[17] The government is obligated to offer some support for its claim that release of the sought-after documents would compromise the secrecy of the grand jury process.[18]

(2) *Exemption (b)(5)*. FOIA Exemption 5, 5 U.S.C. § 552(b)(5), permits withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been interpreted to encompass "those documents, and only those documents, normally privileged in the civil discovery context," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975). Consistent with a change in policy by the Clinton Administration, the Department has since the time of the district court's

opinion released a number of documents previously withheld based on the attorney-client and deliberative process privileges, and now invokes Exemption 5 only for certain documents assertedly protected by the attorney work-product privilege.

■ To withhold a document based on this privilege, the Department must prove that it was prepared under the direction of an attorney in contemplation of litigation. *See Senate of Puerto Rico*, 823 F.2d at 586; *Sprague v. Director, Office of Workers' Comp. Programs, Etc.*, 688 F.2d 862, 869 (1st Cir.1982). And, as with all exemptions, it must offer some basis for concluding that there are no segregable, nonexempt portions of the document. The district court found that the Boseker declaration and *Vaughn* index justified all of the Exemption 5 withholdings, and it pointed to Boseker's assertion that the records to which the work-product privilege was applied reflect "such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to the Church's and other third party individuals' civil and criminal cases."

■ The court specifically considered Document No. 4, whose entry in the *Vaughn* index we previously have quoted, *see supra* p. 230, and concluded that the entry was sufficient to validate the Department's decision to withhold the entire document under Exemption 5. We do not agree. For purposes of this exemption, the *Vaughn* index states only that document No. 4 consists of 21 pages of typed attorney notes "marshalling facts and sources of information created in contemplation of litigation." The Boseker

---

**16.** The inadequacy of the *Vaughn* index is well illustrated by the entries for Document Nos. 178 and 179. Both documents are identified as one-page declarations, with 20–page attachments. No. 178 *is* described as originating "from file marked 'Grand Jury,' " while 179 is identified only as "Grand Jury Materials." Both are claimed exempt under Exemption 3, as well as Exemption 7(C), but no specifics are given as to the contents of the documents and whether all, or only part, of the document implicates privacy concerns.

**17.** Indeed, we suspect that a number of documents found in grand jury files would not be

identifiable as connected to a grand jury proceeding at all because they were generated for another purpose, and presumably would not be labeled as grand jury material upon release.

**18.** We have tried through our approach to the grand jury issue to tread a path that honors the requester's entitlement to an adequate and lawful explanation for any withholding decision, but protects the government from unreasonable burdens in justifying nondisclosure. The government's obligation thus is minimal except for materials assertedly connected to a grand jury investigation that bear no facial connection to grand jury proceedings.

declaration adds to this only generalized comments about all of the documents for which the work-product privilege was asserted. We believe that, at a minimum, an agency seeking to withhold a document in its entirety under this exemption must identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to all portions of the document.

As presently written, the entry for document No. 4 indicates that at least some of the 21 pages of notes involve material covered by the attorney work-product privilege. Because there is no correlation between the three claimed exemptions (Nos. b(5), b(7)(D), b(7)(C)) and specific portions of the document, however, it is not clear whether Exemption 5 is intended to justify withholding of the entire document. Moreover, the index does not disclose the nature of this document: Is it a draft of a pretrial memorandum?; an internal memorandum evaluating whether to file charges or whom to call as witnesses?; or simply a summary of all information collected to date? Neither the Church nor the court is able to evaluate meaningfully whether all of the factual material properly is exempted from disclosure because it is integrated into the document as part of the attorney's pre-trial work, in which event it appropriately could be withheld, *see Mervin v. FTC,* 591 F.2d 821, 826 (D.C.Cir. 1978), or whether the agency has overstepped proper boundaries in determining what constitutes a document prepared in anticipation of litigation.

In *Mervin,* the majority concluded that further government affidavits or *in camera* review was unnecessary for a determination of segregability because the affidavit already submitted demonstrated that any factual material in the four documents at issue there "is incidental to and bound up with, discussion of litigation strategy and the deliberative processes of attorneys actively preparing their defense for a pending lawsuit." *Id.*[19] We do not believe such a conclusion can be reached in this case based on the information provided thus far for a number of documents claimed exempt under Exemption 5. *See, e.g.,* Document Nos. 4, 40 (74-page "prosecution memo"), 76, 91, 92 and 139.[20] Certain other documents for which the Department has invoked Exemption 5 simply are not adequately described to permit meaningful review of the withholding decision. *See, e.g.,* Document Nos. 105–109.[21]

■ (3) *Exemption b(7)(C).* FOIA exemption 7(C), 5 U.S.C. § 552(b)(7)(C), exempts from disclosure information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The Boseker and Gay declarations state that the Department relied on Exemption 7(C) to withhold names and other personal information about various individuals, including personnel of the United States Attorney's Office and FBI agents, other federal, state and local government personnel, and individuals who provided information to the FBI or the USAO.

The parties agree that Exemption 7(C) requires balancing the privacy interests at issue against any public interest in disclo-

**19.** The district court in this case relied on *Mervin* in upholding the Department's application of Exemption 5, noting that an attorney's affidavit sufficed there to prove that factual material contained within the documents fell within the work-product privilege. Unlike the affidavit in *Mervin,* however, the affidavits here are not document-specific, and are thus much less informative.

**20.** We note that factual material contained within a document subject to the work product privilege often will be embraced within the privilege, and thus be exempt from disclosure. *See A. Michael's Piano, Inc. v. FTC,* 18 F.3d 138, 147 (2d Cir.1994); *Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1186 (D.C.Cir.1987).

**21.** We reiterate a point made earlier, that the lack of specificity poses a particular problem with respect to lengthier documents. Although the entries for a number of shorter documents suffer some of the same inadequacies—notably lack of correlation between text and exemptions, and failure to address segregability—the brevity of these documents makes it reasonable to validate the government's withholding decision with little or no additional information. For example, if the Department simply identifies the prosecution for which Document No. 43 was prepared, no further details are necessary. *See also, e.g.,* entries for Document Nos. 68, 70, 74, 93.

sure, *see Reporters Committee,* 489 U.S. at 762, 109 S.Ct. at 1476, and further agree that information identifying specific individuals usually may be withheld because of these individuals' "significant privacy interests in not having their names revealed," *Maynard,* 986 F.2d at 566. The Church, however, contends that the Department's *Vaughn* index repeatedly fails to explain why the agency has withheld an entire document rather than releasing it with the identifying information redacted.[22]

We have pointed to just such deficiencies in our earlier discussion of particular documents, *see supra* pp. 231–233, and need not retread that ground. It suffices to say at this point that many of the index entries for documents assertedly exempt under Exemption 7(C) lack the necessary specificity for a meaningful review of the agency's decision to withhold them in their entirety. The district court did not address the Exemption 7 segregability issue.

■■■ (4) *Exemption b(7)(D).* FOIA exemption 7(D), 5 U.S.C. § 552(b)(7)(D), protects from disclosure

> records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source.

The exemption protects the identity of a confidential source, any information that could identify such a source, and all information furnished by such a source. *Irons v. FBI,* 880 F.2d 1446, 1447 (1st Cir.1989) (en banc). The Supreme Court's *Landano* deci-

sion, —— U.S. at ——, 113 S.Ct. 2014, which we have described earlier, *see supra* at pp. 228, 234, addressed the government's contention that all sources supplying information to a law enforcement agency during a criminal investigation should be presumed confidential within the meaning of Exemption 7. The Court rejected this broad presumption, ruling instead that a source properly is considered confidential only if there has been an express assurance of confidentiality or if the particular circumstances support an inference of confidentiality. When the factors suggesting confidentiality are present, the government may withhold a document under Exemption 7(D) without detailing the circumstances surrounding a particular interview. *Id.* at —— –——, 113 S.Ct. at 2023–24.

After the *Landano* decision, the government re-evaluated all of the documents to which it had applied Exemption 7(D), deleted that provision as a basis for withholding 39 documents, and consequently released an additional 20 pages of information to the Church. The district court found that the remaining 7(D) claims were supported adequately by the *Vaughn* index and the affidavits.

Our review of the index, however, reveals a significant number of entries invoking Exemption 7(D) that are insufficient because they either fail to specify whether the source was provided an express or implied grant of confidentiality, or do not provide sufficient detail about the surrounding circumstances to support an assertion of implied confidentiality.

Document No. 51 in the *Vaughn* index, for example, was withheld based solely on Ex-

---

22. In its brief, the government suggests that it was warranted in dispensing with the item-by-item detail that ordinarily is necessary to justify Exemption 7(C) withholdings because a categorical determination to withhold personal information is permissible in the absence of a demonstrated public interest in that information. We agree that the Church has not put forward a public interest *in the names* or other personal identifying information that would override the strong privacy interest in such information contained in law enforcement files, *see Maynard,* 986 F.2d at 566. A categorical exclusion for identify-

ing information therefore is appropriate here. *Cf. SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1205–06 (D.C.Cir.1991). This conclusion does not resolve the Church's central claim, however—that the government failed to demonstrate on an item-by-item basis why documents should not be released with the personal identifying information redacted. *Cf. Norwood v. FAA,* 993 F.2d 570, 574–75 (6th Cir.1993) (under privacy Exemption 6, "excluding from disclosure any and all fragments of information that might assist a diligent researcher in identifying a person . . . is not supportable").

emption 7(D). The full description for the document is as follows:

> Third party individual correspondence to AUSA regarding draft declaration of third party individual witness statements confidentially obtained. Source identified as confidential elsewhere. (WIF)

The entry does not indicate where in the record this source was identified as confidential. It could have been referring, for example, to the immediately preceding entry, for Document No. 50. That entry, however, concerns a 10–page cover letter and attached letter described as follows:

> Third party individual correspondence to AUSA regarding attached handwritten letter and notes of third party source of information gathered in course of investigation. Implied confidentiality based upon source and relationship to investigation. Refers to not being at liberty to disclose source. (WIF).

 We do not believe it is sufficient, under *Landano*, to invoke Exemption 7(D) by stating generally that confidentiality was implied from a relationship between the author of the document and the investigation. The Supreme Court's *Landano* decision clearly contemplates that a claim of implied confidentiality ordinarily will require disclosure of the specific nature of the factors urged in support of the implication, such as the type of crime or the source's relationship to it. Only in this way will the requester have a "realistic opportunity" to develop an argument that the circumstances do not support an inference of confidentiality, *see Landano,* —— U.S. at ——, 113 S.Ct. at 2024.

Thus, the government must provide more detail to meet its burden of demonstrating that Document No. 50 falls within Exemption 7(D).[23] Document No. 51 is obviously likewise deficient. Similar problems exist in other entries, including Nos. 55, 60, 62, 67, 70, 76, 92, 93, 94, 97, 112, 113, 122–23, 127 and

129.[24] We agree with the district court, however, that an investigator's policy of affording confidentiality in interviews is an adequate basis upon which the government may consider the information provided to the investigator to be confidential. *See, e.g.,* Document Nos. 7 and 19. We suspect that, in such cases, the government at the time of the document search rarely would be in a position to learn the precise nature of any discussion concerning confidentiality between the investigator and interviewee. We think it reasonable to presume, based on the investigator's policy, that he or she had given an assurance of confidentiality.

### IV. *Where Do We Go From Here?*

Our conclusion that the government has failed to provide adequate support for withholding many of the 191 documents listed in the *Vaughn* index requires that we vacate the summary judgment for the agency and return the case to the district court for further proceedings.

What precisely should happen upon remand we leave to the district court's discretion. We offer a few thoughts, however, about what occurs to us as a logical and appropriate course of action. The court may wish to begin by asking the parties to submit a brief statement identifying those documents it believes need further justification in light of our decision. Aided by these, the court could make its own determination of the documents needing additional review, and then direct the government to revise its submissions with respect to only those specific records. Any dispute as to whether other entries should be included could be raised at that time.

In any such proceeding, we assume the good faith and reasonable cooperation of the requesting party as well as of the government. Indeed, the workability of FOIA de-

---

**23.** The government, of course, need not provide so much detail that the confidentiality is destroyed. It must, however, explain as specifically as possible why providing additional information would jeopardize the confidentiality interest. If the explanation is too sketchy, *in camera* review may be necessary.

**24.** We contrast these entries with those containing facts providing a rationale for the inference of confidentiality, such as No. 13 (author incarcerated); No. 100 (communication between husband and wife); No. 101 (threats of harm and harassment); Nos. 102–03 (death threat); No. 120 (threatened harm).

pends largely upon the responsible, as well as responsive, efforts of the parties.

If, after the government has given additional attention to the specified documents, the index remains opaque with respect to certain documents and no other support is provided, the court has various options for proceeding. It could choose to permit discovery limited to specified documents, it could conduct an *in camera* review of selected documents, it could order release of some documents, or it could direct a combination of these procedures.[25]

██ We recognize that the Department already has provided a significant amount of information to the Church, and we do not minimize its effort. Its obligation, however, is to provide enough information about each document to permit "effective advocacy" by the requester:

> [T]he [agency] must bear in mind that the purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure under one or more of the statutory exemptions, but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest.

*Wiener,* 943 F.2d at 979.

*The judgment of the district court therefore is AFFIRMED as to the adequacy of the search. The judgment is otherwise VACATED, and the case REMANDED for further proceedings consistent with this decision. No costs.*

---

**25.** The Church on appeal has made a broad challenge to the adequacy of the government's explanations for withholding documents, and has not argued about the merits of the withholding decisions for those documents for which the index and affidavits are sufficiently detailed. We likewise have focused on the general adequacy of the showing, and have not considered the merits of any particular withholding decision. We note, however, that many of the index entries appear to support nondisclosure of the documents, and we expect that the district court on remand will

simply reaffirm its previous determinations that those documents are exempt from release.

We also have not considered the Church's contention that the Department improperly referred approximately 300 pages of material originating from other agencies to those agencies for processing. The issue was not raised in the Church's opposition to the motion for summary judgment, and we therefore decline to consider it here. The district court may choose to take up this matter on remand.