Graeme SEPHTON, Plaintiff, Appellant,

v.

FEDERAL BUREAU OF INVESTI-GATION, Defendant, Appellee.

No. 01–2502.

United States Court of Appeals, First Circuit.

Oct. 24, 2003.

Caroline Carrithers, for appellant.

Karen L. Goodwin, Assistant U.S. Attorney, with whom Michael J. Sullivan, U.S. Attorney, was on the brief, for appellee.

Before SELYA, LYNCH and LIPEZ, Circuit Judges.

PER CURIAM.

The issue before us is the adequacy of the Federal Bureau of Investigation's search for documents pursuant to a Freedom of Information Act request. For the reasons explained herein, we vacate the summary judgment entered for the Federal Bureau of Investigation and remand for further proceedings.

The appellant, Graeme Sephton, seeks to compel the FBI to produce documents related to the agency's investigation of the 1996 crash of Trans World Airlines Flight 800. Sephton, a board member of an organization seeking further information about the causes of the crash, filed an information request with the FBI under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, in September 1998. This request focused on information regarding foreign objects removed from the bodies of victims of the crash and any related forensic analysis. Specifically, Sephton stated in his FOIA request that the National Transportation Safety Board (NTSB) "reported that all foreign material/objects removed from the victims['] bodies were initially given to the FBI for further analysis." Sephton went on to request a

schedule or listing of such items given to the FBI, and the results of analysis of those objects. Most importantly the identification of the origin of all such material in relation to the 747 aircraft's layout (assuming such material did originate from the 747 and its contents) and the victim's supposed location. Was any of this material of unknown origin. Please forward to me all documents that deal with the following data about each foreign object: size, weight, condition and general description, and all other analytic results including composition.

The FBI refused to release the requested documents, stating that the release might interfere with its ongoing investigation. In November, Sephton appealed this decision to the Department of Justice. Ten months later, the Department of Justice notified Sephton that the FBI was processing the request and would release responsive documents.

The FBI initially identified six responsive documents totaling twenty-one pages,

and then later identified a responsive seven-page attachment to one of the six documents. By October 2000, the FBI had released all twenty-eight pages of responsive material. The contents of these seven documents can be summarized as follows.[1]

Document 1 (two pages): summary of contact with NTSB representative

Document 2 (three pages): communication that a specialist in correlating injuries and/or causes of death of victims as they apply to aircraft cabin/structural damage has been retained, and request for documentation and samples

Document 3 (seven pages): a summary of documents subpoenaed by a federal grand jury

Document 4 (two pages): preliminary statistical analysis of victims' injuries and seat damage

Document 5 (four pages): medical/forensic group chairman's factual report of investigation

Document 6 (three pages): summary of victim injury analysis patterns from the specialist referenced in Document 3

Document 7 (seven pages): medical/forensic investigation analysis report including seating chart indicating victims with foreign bodies

Because the FBI determined that releasing certain information in these documents would compromise the privacy of FBI personnel, others involved in the investigation of Flight 800, and the family members of the victims, it redacted that information pursuant to 5 U.S.C. § 552(b)(7)(C) ("Exemption 7").[2] The FBI also redacted all substantive parts of Document 3 after determining that they were exempt from disclosure under FOIA, 5 U.S.C. § 552(b)(3) and Rule 6(e) of the Federal Rules of Criminal Procedure ("Exemption 3").[3]

Along with copies of these released materials, the FBI submitted the fifteen page declaration of Scott A. Hodes, Acting Chief of the Litigation Unit, Freedom of Information–Privacy Acts Section, Office of Public and Congressional Affairs at FBI headquarters in Washington, D.C. The Hodes declaration, *inter alia*, explained that the FBI uses a "Central Records System (CRS) to maintain all pertinent information which it has acquired in the course of fulfilling mandated law enforcement responsibilities," and that the

General Indices ... consist of an index on various subjects, including the names of individuals and organizations. Only information considered pertinent, rele-

---

1. In an effort to provide a helpful account of the history of this case, we have attempted to summarize the released documents after a careful review of the record. We acknowledge that some inexactitude may exist in this description, but any such inexactitude does not affect in any way our disposition of the appeal.

2. FOIA provides that mandatory disclosure of documents does not apply, *inter alia*, to matters that are "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy...." 5 U.S.C. § 552(b)(7)(C)(2000).

3. FOIA also provides that mandatory disclosure of documents does not apply to matters that are "specifically exempted from disclosure by statute...." 5 U.S.C. § 552(b)(3)(2000). This rule, in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, which bars public disclosure of matters before a grand jury, creates an exemption for documents that would reveal the nature of information before a federal grand jury. *See Church of Scientology v. U.S. Dep't of Justice*, 30 F.3d 224, 235 (1st Cir.1994)(stating that Rule 6(e) qualifies as a statutory exemption from disclosure under Exemption 3).

vant or essential for future retrieval is indexed. Without a 'key' (index) to this mass of information, information essential to ongoing investigations could not be readily retrieved.... Therefore, the General Indices to the CFS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter.

After explaining the filing and indexing system in greater detail, Hodes went on to state that

> [r]ecords responsive to plaintiff's requests were located by a search of the CRS maintained at [the New York] field office. One main file was located. This file is identified as 265A–NY–259028–SubFF and is captioned Unsubs(s); Explosion of TWA Flight 800, July 17, 1996; Acts of Terrorism–International Terrorists. This case involves the investigation of the July 17, 1996 explosion of TWA flight 800.

This file is referred to in the Hodes declaration and in our discussion as the "relevant main file."

With cross-motions for summary judgment pending, Senior District Judge Frank H. Freedman, to whom this case originally was assigned, denied Sephton's motion and granted the FBI's. Specifically, Judge Freedman held that the FBI properly withheld information under Exemption 3. Relying on the Hodes declaration, he also found that the FBI conducted an adequate search.[4] *Sephton v. F.B.I.*, No. 00–30121–FHF, slip op. (D.Mass. Aug. 29, 2001). Sephton appealed both rulings to this court.

The FBI then surrendered its claim based on grand jury secrecy and agreed to release Document 3, previously redacted in substantive part under Exemption 3. However, the FBI requested that we remand the case so that the district court could determine whether the document's release would constitute an unwarranted invasion of privacy of the victims' family members. Although we granted that request, the parties reached agreement regarding the release of Document 3 and the privacy-related redactions before the district court considered the case. Consequently, Sephton renewed his appeal to us on the sole remaining issue: the adequacy of the FBI's search pursuant to Sephton's FOIA request.

In addressing that issue, we noted in an order entered on October 16, 2002, that the Hodes declaration "does not detail the method and mechanism by which this relevant main file was examined. Instead, it states without elaboration that '[t]his file was reviewed for documents pertinent to plaintiff's request for certain information.'" Order of Court, Oct. 16, 2002, pg. 1–2, 1st Cir. ("Remand Order"). Because the Hodes declaration failed to describe the method by which the FBI examined the relevant main file, we remanded to the district court, while retaining jurisdiction, for the limited purpose of requiring the FBI to supplement the record with an affidavit from an appropriate agency official addressing these items: "(1) the approximate size of the relevant file, and (2) the method used to search this file for records responsive to plaintiff's requests." We specified that the proceedings on remand were to be completed "as expeditiously as possible, and in all events within sixty days of the date of this order."

On December 12, 2002, the FBI filed the affidavit of Christine Kiefer, the Acting Chief of the Litigation Unit, Freedom of Information–Privacy Acts Section, Records Management Division at FBI Headquarters in Washington, D.C. Along with the affidavit, the FBI also filed a supplemental memorandum in support of its motion for

---

4. Sephton did not challenge the propriety of the application of Exemption 7.

summary judgment. Six weeks later, Sephton countered with an opposition to the FBI's supplemental memorandum and a motion to include new evidence that Sephton claimed further demonstrated the inadequacy of the FBI's search. In response, the FBI moved for two extensions of time to evaluate the new evidence and to explore settlement of the entire case. Without formally ruling on its authority to accept and consider the new evidence, argumentation, or motions, the district court allowed the extensions in light of the ongoing settlement negotiations. On April 25, 2003, the FBI notified the district court that the parties had failed to reach a settlement and requested another extension to reply to Sephton's new evidence. This motion was granted. On May 9, the FBI filed a reply to Sephton's opposition to the FBI's motion for summary judgment.

At some point subsequent to our Remand Order, presumably as part of settlement negotiations, the FBI released five hundred pages of new material responsive to Sephton's FOIA request. These five hundred pages represent an eighteen-fold increase in the number of responsive pages produced by the FBI prior to that time. Although these five hundred pages were never docketed with the district court, and thus to our knowledge have never been reviewed by any court, we are aware of these materials because they are referenced in Sephton's June 18 request for additional time to review them. At the same time, Sephton requested an extension of time to reply to the FBI's May 9 submission. The district court granted the assented to motion, allowing Sephton until August 1 to review the new material and submit his additional memorandum.

Two days later, however, having become cognizant of the parties' several submissions to the district court, we issued an order requesting that the district court advise us within thirty days if it wished to affirm its original decision or have us relinquish jurisdiction so that it could vacate its prior judgment and conduct any proceedings it deemed necessary. Because of the recent extension of time granted to Sephton, the district court asked for an extension as well, and we enlarged the time for the district court's response to September 2, 2003. During that time, Sephton filed his second opposition to the FBI's supplemental memorandum of law supporting its motion for summary judgment, and the FBI responded with a reply memorandum on August 13.

Tragically and unexpectedly, Judge Freedman passed away on August 22, 2003. Three days later, this case was reassigned to District Judge Michael A. Ponsor, who immediately reviewed the entire case. Judge Ponsor concluded that because we retained jurisdiction in our Remand Order, and because that order was for the limited purpose of supplementing the record with an additional affidavit from the FBI, the district court lacked jurisdiction to consider the parties' subsequent filings. Having determined that all of the subsequent filings beyond the Kiefer declaration were not properly part of the record, Judge Ponsor then analyzed the adequacy of the FBI's search based solely on the record up to and including the Kiefer declaration. On that basis, Judge Ponsor requested that we affirm Judge Freedman's original decision, holding that the FBI's conducted an adequate FOIA search, and forwarded the Kiefer declaration to us.

Judge Ponsor correctly interpreted the scope of our remand order. We commend him for addressing this case so promptly under trying circumstances. At the same time, we now recognize the wisdom of Judge Freedman's willingness to permit filings beyond the supplemental FBI affidavit and the settlement negotiations. That process has produced five hundred

additional pages of documents responsive to Sephton's FOIA request, after the FBI's insistence that the twenty-eight pages of documents released previously were the product of an adequate search fully compliant with the requirements of the FOIA. Under these circumstances, we think it is only prudent to relinquish jurisdiction entirely, vacate the judgment previously entered, and remand this case to the district court to allow it to conduct whatever proceedings it deems necessary to resolve the FOIA issues raised by Sephton. If either party wishes to pursue additional appeals following the completion of proceedings in the district court, such appeals will have to be filed anew.[5]

Judgement vacated. Remanded for further proceedings in the district court. Costs to appellant.

---

5. Sephton filed another appeal from the district court's order of August 28, 2003. (First Circuit Court of Appeals Docket No. 03–2407) Since we retained jurisdiction in our Remand Order, this second appeal is unnecessary. We therefore direct the Clerk of Court to dismiss Sephton's second appeal, No. 03–2407.