Telegraph v. U.S. Dept. of Justice    CV-95-521-M    09/30/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Telegraph Publishing
      Company, Inc.

      v.                                    Civil No. 95-521-M

United States Department
      of Justice


### O R D E R


The plaintiff, Telegraph Publishing Company, Inc. ("Telegraph"), and defendant, United States Department of Justice ("the Department"), continue their dispute concerning Telegraph's request under the Freedom of Information Act ("FOIA"), 5 U.S.C.A. § 552, for records from the Office of the United States Attorney for the District of New Hampshire.  Currently pending before the court are the Justice Department's motion to dismiss or, in the alternative, for summary judgment, and Telegraph's motion for production of a Vaughn index.  As both pleadings raise the same issue — the sufficiency of the Department's response to Telegraph's FOIA request - they are considered together.


### BACKGROUND

Three members of the Nashua, New Hampshire, Board of Aldermen, Philip Grandmaison, Steve Kuchinski, and Thomas Magee, were investigated and ultimately pled guilty to charges arising from the city's award of a contract for public school renovations to Eckman Construction Company.  The investigations were

conducted by the Nashua Police Department, the Federal Bureau of Investigation, and the United States Attorney for the District of New Hampshire ("NHUSA"). After all three aldermen pled guilty, the NHUSA announced in April 1995 that the investigation had ended and no new charges were expected.

Andrew Wolfe, a staff reporter from The Telegraph, a newspaper in Nashua, New Hampshire, submitted a FOIA request to the NHUSA on June 21, 1995, seeking "access to any and all records relating to the investigation and prosecution of three former Nashua aldermen." Wolfe further explained that the materials he sought included transcripts or tapes of conversations involving the three defendants or other public officials, including Harold Eckman (Eckman Construction Company), as well as all reports and records of interviews conducted during the investigation and all physical evidence gathered during the investigation. At the same time, Wolfe requested the same information from the Nashua Police Department, under New Hampshire's Right to Know Law.

The FOIA request was handled by the Executive Office for United States Attorneys ("EOUSA") in Washington, D.C. The EOUSA denied Wolfe's request, other than for public records and newspaper clippings found in the files, on grounds that the Privacy Act exemptions from FOIA, 5 U.S.C.A. §§ 552(b)(6) and (b)(7)(C), permit nondisclosure of nonpublic information in the absence of releases from those who were the subjects of his

requests.  For its part, the Nashua Police Department simply directed Wolfe to contact the NHUSA.

Wolfe filed an administrative appeal of the EOUSA's decision.  Telegraph Publishing Company, publisher of The Telegraph and the plaintiff here, also filed suit in state court for access to the Nashua police records, and filed suit in this court, on October 26, 1995, seeking access to the NHUSA's materials previously requested by Wolfe.  Following in camera review of disputed documents, the state superior court ordered disclosure of most of the records in the police department files, but this court entered a protective order preventing release of any federal grand jury materials provided to the Nashua police officers by federal authorities.

At the first pretrial conference in this case, held before the Magistrate Judge on January 2, 1996, Telegraph stated that it intended to file a motion for a Vaughn index[1] of the documents covered by its request.  At the same conference, the Department acknowledged that, after Wolfe's FOIA request and before Telegraph filed suit, the NHUSA had inadvertently returned some documents previously obtained by grand jury subpoenas to the providing sources.

---

[1]  The term "Vaughn index" refers to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).  It is "a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document," Church of Scientology Int'l v. United States Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).

On January 30, Telegraph moved for production of a Vaughn index, and the Department objected. The Magistrate Judge granted Telegraph's motion, and the Department moved to vacate the order. The Department then moved to dismiss Telegraph's suit, or in the alternative for summary judgment, asserting that the court lacked subject matter jurisdiction as the Department had not improperly withheld information sought under the FOIA. In support of its motion, the Department filed a declaration by Bonnie L. Gay, an EOUSA attorney responsible for requests and litigation under FOIA and the Privacy Act, relying on two FOIA exemptions as justification for withholding the requested materials. The court denied the Department's motion to dismiss or for summary judgment without prejudice to refiling after producing a Vaughn index covering the requested information. In the meantime, Harold Eckman and Eckman Construction Company moved to intervene, which motion was granted.

The Magistrate Judge's order to produce a Vaughn index was modified by the court as follows:

> The government is ordered to define functional categories of records, assign individual documents to the proper categories, and explain to the court why, for each category, nondisclosure is characteristically appropriate. For all of the requested documents that do not fall within a legitimate categorical exemption, the government is ordered to produce a Vaughn index consistent with the March 29, 1996, order of the magistrate judge and with First Circuit precedent. See, e.g., Church of Scientology, 30 F.3d at 231 (stating that, although there is no set formula for a Vaughn index, "to serve its purpose the listing must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with

4

the particular part of a withheld document to which they apply").

Telegraph Publ'g Co. v. United States Dep't of Justice, No. 95-521, slip op. at 12 (D.N.H. July 1, 1996). The Department then filed a status report with a supplemental declaration by Attorney Gay, who stated that she had reviewed the pertinent documents and assigned them to twenty-five functional categories, each of which the Department claimed was exempt from disclosure.

Thereafter, the Department again moved to dismiss or, in the alternative, for summary judgment, supporting its motion with a third supplemental declaration by Attorney Gay in which she described twenty-six categories of information and thirteen privacy interests. The Department also moved to file a declaration pertaining to two categories of materials for in camera review, which was granted. Telegraph objected to defendant's motion to dismiss, and it again moved for production of a Vaughn index. The pending motions, which both address the sufficiency of the Department's disclosure, are resolved as follows.


**DISCUSSION**

In the third supplemental declaration, Attorney Gay states that she examined approximately 14,000 documents that are "at issue in this litigation." Based on her review, the Department continues to assert that all of the nonpublic materials pertaining to the subject matter requested by Telegraph are exempt from disclosure under FOIA by 5 U.S.C.A. §§ 522(b)(6) and

5

(7)(C).[2]  As only 464 documents are identified as "publicly available" most of the documents responsive to Telegraph's request are being withheld.  The Department has identified the withheld materials by assigning them to twenty-six categories and by listing coded privacy interests pertinent to each category that the Department contends justify nondisclosure.  Based on Gay's third supplemental declaration, the Department asserts that none of the materials Telegraph has requested need be disclosed under FOIA.

In its response, Telegraph argues that the third supplemental declaration is insufficient.[3]  Telegraph contends that twenty-two of the twenty-six categories[4] either do not describe the materials sufficiently to permit a reasoned evaluation of whether the materials are exempt or not (and seeks a more detailed Vaughn index or those materials), or are not properly withheld under the exemptions asserted by the Department.

---

[2]  While the Department relies on only two exemptions in its motion for summary judgment, it notes that if those two do not justify withholding all of the requested information, it plans to assert eight other exemptions.

[3]  Telegraph does not contest the adequacy of the Department's search or review of documents in response to its request.  Cf. Church of Scientology, 30 F.3d at 229-30 (agency obligated to perform reasonable search for responsive documents).

[4]  Telegraph waives its request for materials in four of the categories described by defendants:  category one, grand jury subpoenas; category thirteen, letter to agent; category eighteen, TRW credit reports; and category twenty-five, medical records.

The pending motions require the court to decide whether the Department has assigned the requested materials to appropriate functional categories, and whether the asserted exemptions sufficiently justify withholding each functional category of materials. Accordingly, the court must first identify the legal standard applicable in evaluating the sufficiency of the third supplemental declaration, and then examine each category in light of the privacy exemption asserted.

## A.  The FOIA Requirements

FOIA requires government agencies to make their records available to the public upon request, unless a specified exemption applies. 5 U.S.C.A. §§ 552(a)(3) and (b). The purpose and policy of FOIA support broad disclosure and narrow interpretation of claimed exemptions. See Church of Scientology, 30 F.3d at 228-29 (stating FOIA policy and purpose and citing cases). A government agency seeking to withhold materials requested under the FOIA must provide a relatively detailed justification; one sufficient to give "'the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" Id. at 231 (quoting Wiener v. F.B.I., 943 F.2d 972, 977-78 (9th Cir. 1991)). When the agency's decision to withhold information is challenged, the court conducts a de novo review. Id. at 228. The presumption of good faith that attaches to an agency's affidavit (or declaration) in support of

7

withholding requested information applies only when the agency supplies "a reasonably detailed explanation." Id. at 233.

The Department relies here on 5 U.S.C.A. §§ 552(b)(6) ("Exemption 6") and (b)(7)(C) ("Exemption 7(C)") as justification for nondisclosure. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.A. §§ 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(7)(C). While both exemptions protect individual privacy interests, Exemption 6 has been construed as more narrowly focused, exempting materials only if their disclosure would "constitute" a "clearly unwarranted" invasion of personal privacy. See United States Dep't of Defense v. F.L.R.A., 510 U.S. 487, 496 n.6 (1994); United States Dep't of Justice v. Reporters Comm. For Freedom of the Press ("Reporters Committee"), 489 U.S. 749, 756 (1989). Thus, as it appears that the parties do not dispute that all of the materials Telegraph seeks were compiled for law enforcement purposes, because Exemption 7(C) provides broader protection from disclosure, it may be presumed in this case that any materials protected by Exemption 6 would also be protected by Exemption 7(C). Therefore, only Exemption 7(C) need be considered here.

8

The applicability of Exemption 7(C) may be determined by weighing the relative privacy and public interests that are common to "an appropriate class of law enforcement records or information." Reporters Committee, 489 U.S. at 777. Such functional categories, however, must permit the court to understand the shared characteristics of materials that implicate particular exemptions from FOIA disclosure. See Curran v. United States Dep't of Justice, 813 F.2d 473, 475 (1st Cir. 1987); see also In re Dep't of Justice, 999 F.2d 1302, 1309-10 (8th Cir. 1993). Therefore, "a categorical approach to nondisclosure is permissible only when the government can establish that, in every case, a particular type of information may be withheld regardless of the specific surrounding circumstances." Church of Scientology, 30 F.3d at 234; see also Reporters Committee, 489 U.S. at 776. Because FOIA applies to information, rather than records or documents, an agency cannot justify withholding an entire document on grounds that it contains some exempt information. Church of Scientology, 30 F.3d at 232. The governmental agency resisting disclosure bears the burden of showing the correlation between the common characteristics of each category of materials that it claims to be exempt and a particular exemption under FOIA. Church of Scientology, 30 F.3d at 228, 234.

As to each category of materials withheld under Exemption 7(C), the governmental agency must show that the privacy interests asserted outweigh the public interest in disclosure.

9

See Reporters Committee, 489 U.S. at 776; see also Providence Journal Co. v. United States Dep't of Army, 981 F.2d 552, 568 (1st Cir. 1992).  The identity of the party seeking disclosure (except when privilege is an issue) and the purpose for which the materials are sought are irrelevant to the balancing process. Reporters Committee, 489 U.S. at 771.  Instead, disclosure depends "on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny.'" Id. at 772 (quoting Department of Air Force v. Rose, 425 U.S. 352, 372 (1976)).  While Telegraph argues that many of the privacy interests asserted on behalf of individuals are greatly diminished, the Department contends that no public interest is served by disclosing any of the requested materials.

1.   Public Interest

In Reporters Committee, the Supreme Court significantly narrowed the public interest in disclosure under FOIA.  See Department of Defense v. FLRA, 510 U.S. 487, 505 (1994) (Ginsburg, J., concurring).  The only public interest relevant to the FOIA balancing process "is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'"  United States Defense Dep't, 510 U.S. at 495 (quoting Reporters Committee, 489 U.S. at 775).  The Supreme Court further explained:

10

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.

Reporters Committee, 489 at 773. Thus, whether disclosure of requested materials serves the public interest will necessarily depend on the degree of relevance of particular materials to the targeted agency's function and activities. See Reporters Committee, 489 U.S. at 773; Burge v. Eastburn, 934 F.2d 577, 580 (5th Cir. 1991). Further, because only federal agencies, as statutorily defined, are covered by FOIA, disclosure of materials to shed light on the workings, or misfeasance, of local governments or officeholders is not relevant to FOIA. See 5 U.S.C.A. §§ 551(1) and 552(f); Johnson v. Wells, 566 F.2d 1016, 1018 (5th Cir. 1978); see also Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992); Landano v. United States Dep't of Justice, 956 F.2d 422, 430 (3d Cir. 1992), partially vacated on other grounds and remanded, 508 U.S. 165 (1993); Thomas v. Office of the United States Attorney, 928 F. Supp. 245, 251 (E.D.N.Y. 1996).

In this case, Telegraph asserts that disclosure of the materials it has requested, concerning the investigation by the NHUSA's office, the FBI, and Nashua police, of the three Nashua aldermen, Kuchinski, Magee, Grandmaison, and contractor, Hal Eckman, would serve the public interest in two respects: (1) "to illuminate the conduct of the U.S. Attorney in its handling of

11

these cases," and (2) "to reveal the details of the misconduct of the three convicted aldermen, and perhaps other officials, entrusted with protecting the interests of all Nashua citizens." Plaintiff's Memorandum in Support of Its Objection to Defendant's Motion to Dismiss, Document No. 36, at 14. Because Telegraph's second articulated "public interest" focuses on the propriety of activities of local officials rather than a federal agency, it is not a public interest that serves the core purpose of FOIA, and cannot be considered in the context of assessing the applicability of Exemption 7(C). See, e.g., Davis, 968 F.2d at 1282.

Telegraph's remaining identified "public interest" -- an examination of the NHUSA's handling of the investigation and prosecution of the aldermen -- does focus on the activities of a federal agency and implicates a recognized public interest in the workings of the Justice Department and in its prosecutorial decision-making function in particular cases. See, e.g., Davin v. United States Dep't of Justice, 60 F.3d 1043, 1059 (3d Cir. 1995); Church of Scientology, 30 F.3d at 227 n.1; Bast v. United States Dep't of Justice, 665 F.2d 1251, 1255 (D.C. Cir. 1981). As this court has already determined, the public may well have a legitimate interest in verifying public reports of an investigation and in knowing whether the investigating agency made appropriate charging decisions. See Order, July 1, 1996, at 10-11.

When a requester seeks materials about private individuals,[5] which are withheld under Exemption 7(C), rather than records of agency action, however, the public interest is relatively insignificant compared to individuals' own privacy interests. See Reporters Committee, 489 U.S. at 773 and 780; see also Church of Scientology, 30 F.3d at 238 n.22. Absent some clear link between the requested information and a FOIA-recognized public interest in disclosure of the information, privacy interests will outweigh a neglible public interest. See id.; see also Maynard v. C.I.A., 986 F.2d 547, 566 (1st Cir. 1993). The public's interest in disclosure may be considerably heightened, and therefore weigh more heavily in the public/private interest balance, if the requester can offer evidence of agency misconduct to support disclosure of information pertaining to private individuals.[6] See, e.g., Quinon v. F.B.I., 86 F.3d 1222, 1231

_____

[5] Although the three aldermen, who were investigated and convicted and who are subjects of Telegraph's request, were "public officials" in their roles as aldermen, they are private individuals in the FOIA public interest context because their conduct does not reflect the conduct of a federal agency. See Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 568 (1st Cir. 1992). Telegraph's request, however, focuses on information about the NHUSA's investigation and prosecution of the aldermen which is an appropriate public interest under FOIA although the request also requires gathering information about individuals. See Nation Magazine, 71 F.3d at 895 (request for information about an individual may nevertheless be connected to an agency function).

[6] The Department contends that there is no reason to engage in the balancing required by Exemption 7(C) in this particular case because no public interest is served by Telegraph's request. See McCutchen v. United States Dep't of H.H.S., 30 F.3d 183, 188 (D.C. Cir. 1994) ("[a] mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not

13

(D.C. Cir. 1986); Schiffer v. F.B.I., 78 F.3d 1405, 1410 (9th Cir. 1996); McCutchen, 30 F.3d at 188-89; Hunt v. F.B.I., 972 F.2d 286, 289 (9th Cir. 1992). In this case, Telegraph has offered no evidence of misconduct or illegal activity by the Department or the FBI in the investigation or prosecution of the aldermen case leaving the public interest in information about the case with little weight.

2. Privacy Interests

Privacy interests also vary in strength depending on the particular information sought for disclosure as well as, in some cases, the circumstances and persons on whose behalf the agency asserts a privacy interest. In its third supplemental declaration, the Department contends that the requested information includes a variety of private information, such as individuals' connections to the criminal investigation, personal relationships, financial matters, medical records, criminal

---

create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." The Department's argument, if credited, would impermissibly shift its burden to establish the applicability Exemption 7(C), by asserting appropriate privacy interests, to the FOIA requester. Contrary to the Department's position, a FOIA requester need not first show a public interest before the court may consider the privacy interests at stake. See, e.g., Department of Defense v. FLRA, 510 U.S. at 507-08 (Ginsburg, J., concurring); Schiffer v. F.B.I., 78 F.3d 1405, 1410 (9th Cir. 1996) ("Initially, the FBI had to allege a privacy interest of the sort Congress intended section 552(b)(7)(C) to protect."); Computer Professionals v. United States Secret Servs., 72 F.3d 897, 904 (D.C. Cir. 1996) (both interests must be identified before balancing); Burge v. Eastburn, 934 F.2d 577, 579 (5th Cir. 1991).

histories, and identities of "cooperating witnesses," "potential witnesses," "third parties," and "individuals who provided information to law enforcement agencies" who are not otherwise identified in the declaration. The Department also states, through its declaration, that the requested information includes names of state and federal law enforcement personnel.

Telegraph argues that the privacy interests of the three convicted aldermen and Eckman in the requested information are diminished to the point of extinction. The Department counters by asserting that even the convicted defendants retain significant privacy interests in personal information about them. Telegraph contends that law enforcement personnel have no privacy interest in protecting their involvement in the cases, while the Department adamantly asserts important privacy interests.

Case law provides some general guidance in resolving such disputes, though general principles must always be applied in the context of the particular facts of a given case. Under some circumstances, individuals retain a strong privacy interest in their identities, and information identifying individuals may be withheld to protect that privacy interest. Church of Scientology, 30 F.3d at 238. Witnesses who give statements to law enforcement agents during a criminal investigation retain a significant interest in having their identities and other information about them kept confidential. Burge, 934 F.2d at 579. Third parties mentioned in raw investigative files also have a strong interest in nondisclosure of their identities to

15

avoid "unwarranted association with criminal activity," reputational harm, and increased or intrusive interest in them by the public and press. Nation Magazine, Washington Bureau v. United States Customs Servs., 71 F.3d 885, 894 (D.C. Cir. 1995); see also Computer Professionals, 72 F.3d at 904. Citizens convicted of crimes also retain a privacy interest in aspects of their criminal histories, as well as other unrelated private information. See, e.g., Reporters Committee, 489 U.S. at 769; Davis, 968 F.2d at 1281. Law enforcement personnel, including FBI agents, also have significant privacy interests in keeping their names or other identifying information from being generally disclosed. Davin, 60 F.3d at 1058; Maynard, 986 F.2d at 566.

Public employees or officials whose conduct implicates the actual performance by a federal agency of its assigned governmental functions, have a diminished expectation of privacy, although they still retain some privacy interest in materials held by the agency. See, e.g., Providence Journal, 981 F.2d at 568; New England Apple Council v. Donovan, 725 F.2d 139, 143 (1st Cir. 1984). In this case, however, none of the individuals named in Telegraph's request were or are federal employees, officials, or officeholders. Eckman's former candidacy for a United States Senate seat is not the focus of Telegraph's FOIA request. Cf. Nation Magazine, 71 F.3d at 887 and 894 n.9 (Perot retained privacy interest in records, sought in FOIA request, regarding his offers to aid Customs Service while he was a candidate for president). Telegraph has cited no authority to support its

16

assertion that <u>local</u> public officials have a diminished privacy interest, in the FOIA context, in information gathered about them while holding local office.  <u>Cf.</u> <u>Strassmann v. United States Dep't of Justice</u>, 792 F.2d 1267, 1269 (4th Cir. 1986) (recognizing state governor's privacy interest in evidence that he would exercise his Fifth Amendment right not to testify in a grand jury investigation of the state Liquor Commission).  Even if the aldermen have a diminished privacy interest in information related to their office, they still retain a privacy interest in information about them personally.  <u>See, e.g.</u>, <u>Nix v. United States</u>, 572 F.2d 998, 1006 (4th Cir. 1978)("One who serves his <u>state</u> or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties."  (Emphasis added.))

Telegraph also contends that Eckman has a diminished privacy interest in not being associated with the investigation and prosecution of the Nashua aldermen, because he himself held a press conference along with Philip Grandmaison, one of the charged aldermen and an Eckman employee, in which he publicly announced that he was also a target of the federal investigation. Telegraph offers the affidavit of its city editor which confirms that the news conference took place and attaches newspaper articles about it.  Neither the Department nor Eckman, who has intervened in this suit, contests Telegraph's assertion. Therefore, Eckman's news conference will be considered in evaluating his privacy interest in withheld information.

17

Having established the general framework of FOIA with respect to information withheld by an agency, the court now turns to the sufficiency of the Department's justification for withholding the requested information.

**B.    The Third Supplemental Declaration and Exemption 7(C)**

The third supplemental declaration's adequacy depends first on whether the Department's categorization of materials provides meaningful detail sufficient to permit the court to weigh public and privacy interests relative to the withheld materials, and to allow Telegraph to present its case to the court. The Department is entitled to summary judgment[7] if the third supplemental declaration and other materials of record, taken in the light most favorable to Telegraph, "show that there is no genuine issue as to any material fact and that [the Department] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Burka v. United States Dep't H.H.S., 87 F.3d 508, 514 (D.C. Cir. 1996); Aronson v. United States Dep't of Housing and Urban Dev., 822 F.2d 182, 188 (1st Cir. 1987). When the party moving for summary judgment also bears the burden of proof on the issue in dispute, summary judgment will not be granted unless, based on the record taken in the light most favorable to the nonmoving

---

[7]    The court considers the Department's motion as a motion for summary judgment, rather than as a motion to dismiss, as the Department's declarations and other materials submitted by the parties are considered in deciding the motion. See Fed. R. Civ. P. 12(b).

party, no reasonable jury could find for the nonmoving party. See <u>Winnacunnet v. National Union</u>, 84 F.3d 32, 35 (1st Cir. 1996); <u>see also</u> <u>Laningham v. United States Navy</u>, 813 F.2d 1236, 1241 (D.C. Cir. 1987). Thus, the Department is entitled to summary judgment only if its declarations:

> describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption . . . , and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

<u>Davin</u>, 60 F.3d at 1050 (quotations and citations omitted). Accordingly, the third supplemental declaration is examined under the applicable legal standards.[8]

The third supplemental declaration divides the approximately 14,000 documents at issue into twenty-six categories and, using a coded system, assigns one or more of thirteen generic privacy interests to each category. The description for each privacy interest is the same for all categories of documents so that when the Department asserts a particular privacy interest for a category of documents, the declaration refers to the single generic description for that privacy interest by its number. For instance, the first privacy interest, "connection with the

---

[8] Although Telegraph hints at bad faith actions by the Department in its handling of documents and litigation, the court finds that the record presented here is insufficient to support such a claim. Nevertheless, because the Department's justification for withholding requested information lacks sufficient detail and specificity in many cases, the Department's declaration is not entitled to a good faith presumption. <u>See</u> <u>Church of Scientology</u>, 30 F.3d at 233.

criminal investigation of Nashua aldermen," is described in general terms in the section pertaining to the first category of documents, "Grand jury re third parties." When the declaration again references the same first privacy interest for the third, fourth, fifth, and other categories of documents, the declaration states privacy interest "1" and refers back to the first category for the generic description of the first privacy interest without providing any particularized detail relevant to the specific category of documents.

A coded system, such as that used to provide the privacy interests, has been approved in the First Circuit when it "more efficiently and clearly" serves the function of a Vaughn index. Maynard, 986 F.2d at 559 n.13. However, a coded system that fails to provide the necessary detailed description of withheld documents does not fulfill the agency's FOIA obligation. See Davin, 60 F.3d at 1050 ("an agency using justification codes must also include specific factual information concerning the documents withheld and correlate the claimed exemptions to the withheld documents"); see also King v. United States Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987) ("Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.")

Many of the categories provided by the Department include documents whose contents are not sufficiently described, nor are they well understood or self evident, with the result that public

interest in the information is difficult or impossible to assess. Then, the coded descriptions of the asserted privacy interests, without any particularization to the information in the category, offer no solid basis to evaluate the actual privacy interests implicated by disclosure of particular information. To compound the problem, the individuals whose privacy interests the Department is protecting by withholding the documents are generally referred to as "third parties" without further identification or explanation of their potentially different roles or status in the investigation and prosecutions. In many categories, at least a functional identity of the "third party" is necessary to evaluate discrete privacy interests. Finally, the Department's across-the-board assertion that redaction of identifying information would not allow disclosure of any of the withheld documents ignores the reduced privacy interests of the three convicted aldermen and Eckman in the fact of their connection to the investigation, and therefore is ineffective to preclude consideration of redaction as a solution.

Because of the deficiencies in the declaration, a comprehensive final determination as to the validity of the Department's decision to withhold the documents is not possible. Nevertheless, as to some of the categories, the information described is readily understood and a decision can be made based on the current declaration. Each category is addressed as follows with direction as to whether the description and

21

justification in the declaration is sufficient, and if so, whether the information is properly withheld.

1.    Materials Responsive to Grand Jury Subpoenas[9]

The first category for review, the second listed in the third supplemental declaration, consists of 10,259 documents that are "copies of third party checks, copies of third party phone logs, phone bill statements, bills of repair and invoices." Neither the identities of the "third parties" to whom these materials belong nor their status (i.e., defendants, targets of the investigation, other associates of those individuals, or other witnesses) is revealed.  The Department contends that this assortment of documents shares the common characteristic of being individuals' private records that the government happens to be storing and that contain private information that actual or prospective grand jury witnesses were required to produce.  The Department further contends that the information contained in the documents is private because it reveals details about the individuals' personal lives such as what they spent money on, details about their financial credit, and with whom they talk on the telephone.  Telegraph objects that this large category

_____

[9]  At this stage, the Department relies exclusively on Exemptions 6 and 7(C) but has indicated that it will assert Exemption 3 (which allows the withholding of grand jury materials, Church of Scientology, 30 F.3d at 235) if the privacy exemptions are not sufficient to justify withholding all information.  As the Department has not addressed Exemption 3, the court does not consider its applicability to the requested information.

22

inappropriately groups dissimilar information, such as telephone logs and personal checks, which require separate balancing assessments for the claimed privacy exemption and fails to identify the individuals whose privacy is being protected.

The court agrees that the grand jury materials described by the Defendant are not as uniform or well-understood as the "rap sheets" considered in Reporters Committee. The court recognizes, however, that the personal information in telephone bills and logs, checks, repair bills, and other business or service invoices generally implicates the same type of personal privacy interests, suggesting a single functional category. The court also recognizes that the individuals whose records these are, whoever they may be, have a strong privacy interest in all of these records. In this category, while individuals' identities might be hidden through redaction on each document, without identities, the information would be of little use to the public. Unless one knows who paid what to whom and who talked to whom, the records would have little significance with respect to assessing the Department's handling of the investigation and prosecution of the aldermen cases. In addition, because Telegraph relies on a relatively weak public interest in a general review of the Department's conduct of the aldermen investigation and prosecutions, given the absence of evidence of wrongdoing or misfeasance, the asserted public interest cannot overcome a recognized privacy interest in the information. Accordingly, despite the somewhat ill-defined category, the

23

Department has carried its burden of showing through a sufficiently detailed explanation that disclosure of these documents "could reasonably be expected to constitute an unwarranted invasion of personal privacy" such that these documents are exempt from disclosure under FOIA.  5 U.S.C.A. § 552(b)(7)(C).

2.    Facsimile Machine Cover Sheets

The declaration describes this category of five documents as public information except for the names of federal and state law enforcement personnel and other individuals who were connected with the investigation in some way.  The Department contends that disclosure of the individuals' names would identify them with the investigation of the Nashua aldermen, which in turn would harm their reputations and possibly subject them to public scrutiny.[10] As to law enforcement personnel, the Department contends identifying them would reveal their assignment to the case, which is private information.

For these five documents, private individuals other than the three defendants and Eckman are likely to have a significant

---

[10]    A similar generic privacy interest justification for withholding information was found to be too general to satisfy the agency's obligation under FOIA.  Davin, 60 F.3d at 1051 ("the possibility that disclosure could 'announce to the world that they were of investigative interest to the FBI and therefore permit derogatory inferences to made therefrom,' . . . [is] broad enough to apply to any FOIA request.") Nevertheless, the Department's explanation will be considered in each context in which it is raised to determine whether it is sufficiently tied to the content of withheld information.  Id.

24

privacy interest in not being publicly associated with a criminal investigation, and the public's interest in the conduct of the investigation does not justify revealing their identities. The three aldermen and Eckman, however, have no privacy interest in their contact with the investigation as that is public knowledge, so that their names need not be redacted. Law enforcement personnel have a privacy interest in avoiding harassment and annoyance in their personal and official lives based on identification with the investigation. See The Providence Journal, 981 F.2d at 568. The public's interest in the identities of individual officers assigned to an investigation is generally negligible, and Telegraph's asserted public interest in ascertaining the role of various law enforcement groups in the investigation does not require individual identities if the Department can identify whether the individual was associated with the Nashua police or the FBI. The Department shall release the five documents with names of individuals and law enforcement personnel, other than the three aldermen and Eckman, redacted. It shall not redact information identifying a police department or agency.

3. Agents' Notes re Grand Jury Subpoenas to Third Parties

The Department says that disclosure of these three documents would invade the privacy of individuals referred to in the notes because their connection with the criminal investigation would be revealed. In this category, the individuals' identities are

25

critical.  If they are the three aldermen and Eckman, there is no privacy interest to protect.  Other third parties, however, have significant privacy interests in not being associated with the investigation, and those interests certainly would overcome the weak public interest in the information.  As this category is insufficient to allow a meaningful balancing of relevant interests, however, none can be made.  The Department is directed to clarify the identities of the third parties without identifying individuals other than the three aldermen and Eckman.

4.    Chronology Detailing Events and Statements by Third Parties, Prepared by Agent[11]

The Department states that the chronology of events, and statements by third parties, contained in a fifteen page document prepared by a federal agent, implicates ten of the thirteen privacy interests of "third parties," including law enforcement personnel, cooperating witnesses, sources, and potential witnesses.  Privacy interests in some information, such as medical records, personal expense accounts, and credit histories are sufficiently weighty as to any "third party" to justify nondisclosure.  Other privacy interests, such as an individual's connection with the criminal investigation, "personal details,"[12]

_____

[11]   The court again notes that because the Department has relied on only the privacy exemptions, it does not consider the possible application of other exemptions under § 552(b).

[12]   The explanation offered for "personal details" states: "Disclosure of documents containing private details about an individual can lead to disclosures that would reveal the identity

relationships to defendants, and personal experiences depend for their significance on the individual involved or are too general to provide a sufficient justification for nondisclosure. Individuals other than the defendants and Eckman have a privacy interest in nondisclosure of their connection to the investigation such that their identities should be protected. But even without the individuals' identities revealed, the chronology would seem to provide a good source for evaluating the investigation.

As the Department has failed to meet its burden to provide sufficient detail to justify withholding this document in its entirety, it must either redact the truly private information, with appropriate explanation, and release the document, or prepare a more complete and specific explanation of why the entire document is exempt from disclosure.[13]

_____

of an individual's relatives, what babysitters a family uses, who baked a birthday cake for whom, who is invited to an engagement or anniversary dinner, whose children play together, and charitable endeavors of individuals." The same could be said for almost any information about an individual that would allow someone to do further investigation. To the extent the withheld chronologies, in fact, reveal individuals' baby sitters, relatives, recipients of birthday cakes, friends, and charities, they may involve significant privacy interests. The Department must be more specific.

[13] The Department provides a general explanation of why redaction would not sufficiently protect the privacy interests at stake in the 14,000 withheld documents. While the explanation may apply to many documents, it does not apply to all. For instance, to the extent the Department argues that redaction of identifying information will not protect the three aldermen defendants from being identified with the investigation, the Department is protecting a nonexistent privacy interest. On the other hand, the court agrees that in circumstances where the

5.    Presentence Reports on Third Party Defendants

Although presentence reports are subject to FOIA disclosure, they often contain information that is sufficiently private to justify withholding them under a privacy exemption.  See Crooker v. United States Parole Comm'n, 760 F.2d 1, 3 n.2 (1st Cir. 1985).  As has been discussed, the public's general interest in the conduct of the investigation and prosecutions does not weigh heavily against the defendants' significant privacy interest in the information contained in presentence reports.  The Department appropriately withheld the presentence reports.

6.    Correspondence Between Attorneys Representing Third Parties and the United States Attorney

The Department groups 164 pages of correspondence into a category that it describes as implicating general privacy interests in financial information, medical records, criminal histories, personal experiences, telephone records, relationship to the defendants, and other personal details about targets of the investigation (some of whom were not indicted), witnesses, and other sources of information.  As the contents of such correspondence is not specifically described, well-known, or self-evident, the extent of public interest in the information

---

individuals identities cannot be hidden by redaction and the information is private (such as personal financial or medical information), withholding entire documents is the only solution. The Department's general, across-the-board approach, however, does not satisfy its burden of demonstrating why redaction, in some cases, would not protect privacy interests.  See Church of Scientology, 30 F.3d at 238 n.22.

cannot be determined and the generic privacy interests asserted are not adequate to justify withholding the documents.

The Department shall provide greater detail about the identities of the third parties (breaking them into classes if necessary to protect their actual identities) and the particular privacy interests implicated by the letters (e.g., all of the defendants' attorneys' letters implicate their connection to the investigation but only some may reveal financial or telephone information), and to explain whether redaction could be effective to permit disclosure of any of the withheld correspondence.

7.   Correspondence From Assistant United States Attorney to
     Probation Officer Regarding the Defendants

Five pages of correspondence from the Assistant United States Attorney handling the prosecution of the defendants to the Probation Officer is withheld because it contains personal details and the criminal histories of the defendants.  Although the "personal details" privacy interest presented by the Department is terribly imprecise, the information gathered by the probation department (a neutral information-gathering arm of the court) is known by the court to include significantly private information about a defendant.  Telegraph contends that the correspondence would serve the public interest by revealing the prosecutor's thought process and information known at that stage of the case.  Recognizing some validity to the public interest asserted, the court nevertheless concludes that the defendants' privacy interests protecting the kind of personal information

29

described outweighs the articulated public interest.  This category is properly withheld.

    8.    <u>Correspondence from the FBI to the United States Attorney Dated 3/31/93</u>

The declaration describes the correspondence as nine pages summarizing the statements of ten witnesses about matters before the grand jury.  The Department lists nine of the thirteen coded privacy interests including connection to the investigation, financial matters, telephone information, personal details, and medical records as justification for nondisclosure.  Telegraph acknowledges the potential privacy interests in the information and suggests that redaction of the witnesses' identities and other names from the documents would cure at least some of the privacy interests asserted.  Telegraph also contends that it needs more detail about the information in the correspondence to present its case, although it assumes that the correspondence "would shed a good deal of light on the government's investigation and prosecution of the three Nashua aldermen."

Despite Telegraph's uncertainty, this category seems relatively clear: witnesses before the grand jury gave evidence pertaining to the investigation.  The summary of witnesses' statements would certainly provide some insight into the type and amount of evidence of wrongdoing in the aldermen cases, but balanced against the substantial privacy interests of the witnesses and unindicted suspects in the investigation, disclosure of the documents with all identifying information

30

would very likely constitute an unwarranted invasion of personal privacy. Accordingly, the Department shall respond to the possibility of redacting identifying information from the correspondence to permit partial disclosure.

    9.   <u>Criminal Authorization Sheet re Third Party Defendants</u>

The Department contends that the six-page criminal authorization sheet is exempt from disclosure because it reveals social security numbers and the identities of suspects who were not indicted. Because neither the court nor Telegraph knows what information a "criminal authorization sheet" may be expected to include, neither can assess the public interest in the information or weigh it against the privacy interests asserted by the Department. If there were a public interest in the information, it would seem that redaction of the social security numbers and other identifying information about unindicted suspects might cure the privacy issues raised. The Department shall provide a more detailed description of the information withheld in this category and shall also address redaction of sensitive information.

    10.   <u>Prosecution Memoranda, Draft Indictment and Cover Letter From AUSA to Public Integrity Section, Criminal Division, Department of Justice, re Third Party Defendants</u>

The Department describes this category of eighteen pages as "various prosecutorial documents" that connect individuals to the criminal investigation, including suspects who were investigated

but not indicted, witnesses, and informants.  The Department also states that the documents include individuals' financial information.  It seems likely that the prosecution memoranda, whatever they may be, implicate protectable privacy interests.  The imprecise category, however, is insufficient to support summary judgment in the Department's favor.  The Department shall provide a Vaughn index of these documents to allow a reasoned evaluation of the competing interests implicated by disclosure.


11.  Correspondence--Character Letters by Third Parties re Third Party Defendant for use in Sentencing

The information in this category of 240 pages is readily understood and evaluated.  The information is private, and the defendants' privacy interests in the information is not overborn by the public's interest in reviewing the investigation.  As disclosure of this information would be an unwarranted invasion of the defendants' privacy and the privacy of those writing the letters, the correspondence in this category is properly withheld.


12.  Nashua Police Department Reports of Five Witness Interviews

The witness interviews were conducted during ten days prior to convening the grand jury and provided the information that became the focus of the grand jury's proceedings.  The reports comprise fifty-one pages.  The Department lists seven of the coded privacy interests in support of withholding the reports:

32

connection with the investigation, financial matters, personal details, individuals' relationships to the criminal defendants, cooperating witnesses and other sources of information, names of law enforcement personnel, and potential witnesses. Telegraph asserts that this category and the next include information that might shed light on the interaction between city and federal law enforcement in this case.

While the court credits the Department's assertion of privacy interests in the reports, because the presentation is bereft of detail specific to the reports, it is difficult to weigh the competing interests. Many of the privacy concerns that are based on identification of individuals or their names could certainly be addressed through appropriate redaction. Whether redaction can address all or most of the privacy concerns so that the balance tips in favor of disclosure of some of the information cannot be determined on this record. The declaration, therefore, is insufficient.

The Department shall review the reports and provide a more detailed analysis, as required in a <u>Vaughn</u> index, of the privacy interests implicated by the information and the possible ameliorative effect of redaction.

13. <u>Nashua Police Department Reports of Third Party Witnesses' and Targets' Interviews After the Grand Jury Convened</u>

The Department contends that the 391 pages of reports made after the grand jury convened involve all thirteen of the privacy

33

interests listed: the same privacy interests as the earlier reports along with privacy interests in financial information, telephone records and numbers, personal details, and individuals' relationships with the defendants. The Department does not explain the significance of separate categories for reports made before and after the convening of the grand jury. The same concerns and problems apply to this category as to its counterpart, number twelve, and the Department shall respond accordingly.

14. <u>FBI Reports of Third Parties for the Grand Jury</u>

The Department categorically withheld 112 pages of FBI "302s" or reports of interviews of witnesses, targets, and confidential informants that were prepared for the grand jury on grounds that the reports implicate all thirteen privacy interests. The same issues apply to this category as were discussed in numbers twelve and thirteen, and the Department shall respond accordingly.

15. <u>Grand Jury Transcripts and Exhibits</u>

The Department withheld all grand jury transcripts and exhibits, separated into two different categories, on grounds that they contain private information. Relying exclusively on the privacy exemptions, 6 and 7(c), the Department asserts that it need not claim the grand jury exemption. The Department's piecemeal approach to its FOIA obligations is both frustrating

and unjustifiably time consuming.  While the transcripts and exhibits no doubt contain some private information, they may also contain information that is sufficiently nonprivate that it would be disclosable but for Exemption 3 and Federal Rule of Criminal Procedure 6(e).  The Department's justification is insufficient as presented, and it shall address all applicable exemptions in appropriate detail.


16.  <u>Assistant United States Attorneys' Notes on Investigation and Correspondence With Third Parties</u>

The declaration describes 137 pages in the category as lists of questions for the grand jury proceeding and notes about witnesses and their statements to the grand jury.  As in prior categories, the Department asserts several of the coded privacy interests (connection with the investigation, financial matters, telephone information, personal details, relationship to the defendants, and status as witness or informant) without particularized detail pertaining to the information in this category.  The category lacks sufficient detail to determine whether redaction of private information and names would be sufficient to protect the privacy interests asserted.  The Department shall address the category in greater detail, including whether redaction would allow disclosure of at least some of the information.


17.  <u>Assistant United States Attorney's Correspondence With Law Enforcement Agencies About Investigation</u>

35

The three pages in this category consist of correspondence to law enforcement agencies including the New Hampshire State Police and the Nashua Police Department. The Department contends that the correspondence would reveal the names and identities of law enforcement personnel, and unindicted suspects. The Department shall address redaction with respect to this category.

18. <u>Grand Jury Exhibits</u>

The Department withheld 561 pages of grand jury exhibits as implicating most of the listed privacy interests. To the extent that these exhibits reveal financial matters, medical records, telephone information, and identities of individuals with reasonable privacy interests in the information, that information is properly withheld. If otherwise disclosable information is included in the category, the Department shall address whether the identities of individuals may be redacted to protect their privacy interests in that information.

19. <u>FBI Reports of Documents Received Pursuant to Grand Jury Subpoenas</u>

This category includes nineteen pages of "302" reports that the Department describes as a chronicle of documents received by the FBI in response to grand jury subpoenas. The Department asserts privacy interests in revealing connections to the investigation, financial matters, telephone records, medical records, and social security numbers. Although the court is not familiar with an FBI chronicle of this type, it seems likely that

36

this category does not include individuals' private records, but only refers to them, and that redaction of individuals' identities and social security numbers might protect their legitimate privacy interests. The Department shall provide greater detail about the category, as necessary to properly describe its contents, and shall address redaction of the reports.

20. <u>Two Categories of Materials Submitted In Camera</u>

As to the first category of <u>in camera</u> information, the Department contends that disclosure of its existence in the possession of the Department would indicate that the grand jury had considered individuals connected with the information to be implicated in the aldermen investigation and thus invade their privacy. The court disagrees. The withheld information is described as ninety-two pages of campaign contribution lists of all of the Nashua aldermen and women from 1982 through 1992. Since three Nashua aldermen were indicted, the fact that contribution lists were part of the investigatory file (whether or not they were examined by the grand jury) should surprise no one. Thus, the mere connection between the lists and the investigation does not invade the privacy of unindicted people. The court makes no finding as to the relative privacy and public interests in the contents of the lists, as Telegraph has not yet had an opportunity to present its case for disclosure.

37

The first category also includes a variety of other documents that the Department contends it cannot publicly identify without violating the privacy of individuals.  The first, a newspaper article by Andrew Wolfe, dated April 6, 1994, is described as implicating an uninvolved third party in the investigation because the article mentions that defendant Magee visited him in the hospital.  The privacy interest, if any, in the article does not prevent identification.

The existence of correspondence pertaining to a FOIA request to the Department on behalf of Eckman need not be withheld as Eckman made his connection to the investigation a matter of public record.  The last two items are described as a letter to the Department from a third party (no information about the subject matter is provided) and a letter to defendant Magee concerning closing an investigation, with a newspaper article attached.  Those items implicate sufficiently private interests of the identified parties to tip the balance against public identification.

The second category consists of various audio and video tapes.  The first two audio tapes are properly withheld.  The video tape about defendant Kuchinski that was televised in April 1991 need not be protected from identification.  The age of the video tape, in this case, should not be determinative, as Andrew Wolfe made his first request for information four years after the tape was broadcast, when it was not "practically obscure" as the Department now argues.  The fact that the last two video tapes

38

exist in the file may be revealed as Eckman has not protected his privacy as a target of the investigation.

The Department shall decide whether the in camera materials that now must be appropriately identified (the campaign contribution lists, the April 1994 article, the FOIA request on behalf of Eckman, the Kuchinski video tape, and two Eckman video tapes) are exempt from FOIA disclosure, and if so, properly justify withholding them.

    21.  Table of Contents of Trial Notebook

The Department states that the table of contents "reiterates all of the above categories" referring, apparently, to the twenty-five categories listed in the declaration before the contents category and invokes all of the listed privacy interests.  No further explanation is offered.  As the Department has not identified the source or use of the trial notebook or provided any factual specifics about the information included, it has not carried its burden to describe a category of withheld information with sufficient detail to allow the court to weigh competing interests.  A Vaughn index is required to determine whether this category of information is exempt from disclosure.

In summary, the Department has provided a sufficient justification for withholding the following categories of information as identified in the third supplemental declaration and the declaration for in camera review: (1) category 2,

39

materials responsive to grand jury subpoenas; (2) category 6, presentence reports; (3) category 8, correspondence from the AUSA to the Probation Officer; (4) category 12, character letters; (5) category 23, the last two items described (letters); (6) category 24, the first two audio tapes. As to the remaining information, the Department's showing is insufficient to permit identifying and balancing competing interests under Exemptions 6 and 7(c). For the remaining categories of documents, the Department shall provide either greater detail and specification as to the identified category or a <u>Vaughn</u> index of individual documents. In either case, the Department shall address the efficacy of appropriate redaction with respect to individual documents or categories of documents. Further, the Department shall raise and fully address <u>all</u> exemptions that it contends are applicable to justify nondisclosure of any of the withheld information.

## C.  <u>Attorneys' Fees</u>

Telegraph requests that it be awarded attorneys' fees at this stage in the litigation. FOIA allows the court, in its discretion, to award attorneys' fees to a requesting party who substantially prevails in an FOIA request. 5 U.S.C.A. § 552(a)(4)(E). An attorneys' fee award depends upon a two-step process: substantial success and the balance of four equitable factors. <u>See</u> <u>Maynard</u>, 986 F.2d at 568. Although an interim award of fees may be appropriate in some cases, Telegraph has made an insufficient showing in support of its request. <u>See,</u>

40

e.g., <u>Allen v. F.B.I</u>, 716 F. Supp. 667, 672 (D.D.C. 1988).
Accordingly, the court declines to exercise its discretion to award attorneys' fees at this stage.


## CONCLUSION

For the foregoing reasons, Telegraph's motion for a <u>Vaughn</u> index (document no. 34) is granted in part and denied in part, and the Department's motion for summary judgment (document no. 30) is granted in part and denied in part.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

September 30, 1997

cc:  Richard c. Gagliuso, Esq.
     Gretchen Leah Witt, Esq.
     Steven M. Gordon, Esq.